**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

L&W SUPPLY CORPORATION,

      Plaintiff,

      v.

ALABASTER ASSURANCE COMPANY, LTD.,

      Defendant.

No. 20 C 3265

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

In Count I of its complaint, L&W Supply seeks a declaration that it is not required to reimburse its insurance company, Alabaster Assurance, for payments Alabaster made to an additional insured under the policy. In Count II, L&W claims that Alabaster made the payments to the additional insured in bad faith. Alabaster has moved to dismiss Count II for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 10. That motion is denied.

**Analysis**

Alabaster's sole argument is that Count II is "preempted" by 215 ILCS § 5/155 ("Section 155"). Section 155 provides:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount [specified later in the statute, which is not relevant to this motion].

215 ILCS § 5/155. The Illinois Supreme Court has held that Section 155—in combination with the contractual right to proceeds under an insurance policy— provides a sufficient remedy for an insurer's bad faith refusal or delay of payment. *See Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897 (Ill. 1996). In *Cramer*, the court reversed a lower court decision that had recognized a "separate and independent" tort claim—in addition to the contractual rights provided by the insurance policy—to remedy an insurer's bad faith refusal or delay in payment of insurance proceeds. *Id.* at 904. The court held that such a tort claim was not recognized under Illinois law. On this basis, Alabaster argues that L&W's bad faith claim must be dismissed.

The problem with this argument is that *Cramer* also explained that Section 155 applies to refusals or delays in payment. *Id.* at 900 (Section 155 "provides an extracontractual remedy to policyholders whose insurer's *refusal* to recognize liability and pay a claim under a policy is vexatious and unreasonable.") (emphasis added). And notably, this case is *not* about an insurer's refusal to pay or a delay in payment. Rather, L&W alleges that Alabaster acted in bad faith in deciding *to pay* the additional insured and *to seek payment* from L&W. It is not clear that Section 155 applies to either of these circumstances.

The parties address this issue, but in a somewhat confused and incomplete fashion. *See* R. 15 at 6-7; R. 19 at 7. The details of the parties' confusion are unimportant. What is important, however, is that neither party addresses *Cramer's* detailed explication of Section 155. Because it appears to the Court—particularly in light of *Cramer*—that the statute does not apply to L&W's case, the Court will not

2

dismiss Count II at this stage.[1] Alabaster may raise the issue again on summary judgment if appropriate.

Additionally, a separate line of analysis motivates the Court's decision. As discussed, *Cramer* held that Illinois law does not permit a tort claim for an insurer's bad faith failure to pay policy proceeds. The court also explained, however, that the duty to perform a contract in good faith and with fair dealing was sufficient to establish a tort claim for breach of the "duty to settle." *See Cramer*, 675 N.E.2d at 903. This duty arises when an insurer has assumed the policyholder's defense against a third-party but, in hopes of winning at trial, rejects a settlement offer from the third-party that is within the policy limits. The tort of breach of the "duty to settle" permits the policyholder to sue the insurer for a verdict in excess of the policy limits if the insurer's refusal to settle for an amount within the policy limits was in bad faith. The court in *Cramer* explained that this tort is necessary to protect liability policyholders because insurance policies generally do not "specifically define the liability insurer's duty when responding to settlement offers." *Id.* Absent a "specific definition" of the insurer's duty to settle there is no contractual remedy. Thus, in order to address the lack of a contractual remedy, *Cramer* held that recognition of the tort of "duty to settle" under Illinois law was appropriate.

---

[1] The Court notes that Section 155 applies to "liability of an insurance company on a policy." Certainly, Alabaster's "liability on a policy" is at issue here in general. But reading the statute in light of *Cramer*, the Court understands this part of the statute to refer to a lawsuit brought by an insurance company seeking a declaratory judgment that it *does not* have "liability on a policy" in order to justify its refusal to pay. The parties do not address whether this clause in Section 155 should be so narrowly interpreted.

Here, L&W's bad faith claim appears to be the mirror image of a "duty to settle" claim. L&W does not complain that Alabaster failed to settle when it should have. Instead, L&W claims that Alabaster acted in bad faith when it paid a claim it should *not* have (in order to trigger reimbursement from L&W under the policy).[2] Yet, despite this reversal of roles, L&W's claim is still based on an insurer's duty to handle a third-party's liability claim in good faith.

If L&W's policy does not "specifically define" Alabaster's duties when responding to a third-party claim, that would suggest that L&W's claim—like a claim for failure to settle—falls outside the scope of Section 155. Neither party addresses this aspect of *Cramer's* holding or Alabaster's duty under the policy in this scenario.

Furthermore, analysis of Alabaster's obligations under the contract also is necessary to address L&W's primary claim, which is for a declaration concerning those very obligations. If both claims require analysis of the same issue, it would be better to address them together after fulsome briefing on that issue. As with the issue of the statute's scope, the parties' briefing missed the mark on the issue of Alabaster's duties under the policy, providing another reason to defer any final decision about the application of Section 155 to this case until summary judgment.[3]

---

[2] L&W seems to imply that Alabaster wanted to take this action to harm L&W because the policy was not otherwise profitable due to the earlier corporate relationship between the parties. This is not expressly stated in the complaint or the briefs, so Alabaster's alleged motivation is unclear. But Alabaster's motivation is not relevant to deciding whether Count II states a claim that is permitted under Illinois law, which is the only issue on this motion.

[3] Both parties cite cases they argue permitted or denied claims analogous to Count II. *See* R. 15 at 4-6; R. 19 at 5-6. The problem with those cases, however, is that they don't address the viability of the claims with respect to Section 155. It is also difficult

## Conclusion

Therefore, Alabaster's motion to dismiss [10] is denied. The parties should submit a joint status report by November 6, 2020 explaining how they would like to proceed with the case.

ENTERED:

Thomas M Durkin
_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  October 23, 2020

---

for the Court to assess the relevance of those cases without closer analysis of the duties imposed by the policy at issue in light of *Cramer*.